<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WILLIAM HOFFMAN, | : | |
| | : | Civil Action No. 10-0407 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
William Hoffman
Northern State Prison
P.O. Box 2300
168 Frontage Road
Newark, NJ 07114

**SHERIDAN**, District Judge

　　Plaintiff William Hoffman, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

　　At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that during his confinement at Northern State Prison, an unspecified period of time, he was forced to share a cell with a smoker who "constantly" smoked, including random hours at night. Plaintiff alleges that his confinement with a smoker caused him "attacks of coughing, shortness of breath, headaches, and chest pains."

Plaintiff alleges that the common areas of Northern State Prison retain the "stench" of environmental tobacco smoke ("ETS"). Plaintiff alleges that he is forced to walk in file to and from work, school, and other areas of the prison, involuntarily breathing in ETS. Plaintiff alleges that he is exposed to second-hand smoke in the recreation yard, where the designated smoking area is not enforced, and where correctional officers smoke.

Plaintiff alleges that there are no non-smoking areas and that the smoking prohibition in cells is not enforced.

Plaintiff alleges that at his work assignment he must use a bathroom in which other prisoners smoke.

Plaintiff alleges that when he requested a cell change or a cellmate who doesn't smoke, the correctional officer would respond, "No.  Smoking isn't allowed in the cells," "Are you saying someone is smoking in their cell because this is a no smoking building."  Plaintiff alleges that "I couldn't say 'Yes,' due to being a rat and being retaliated on for telling.  So I was forced to indure [sic] the harmful unhealthy consequences of secondhand smoke, E.T.S., and thirdhand smoke."  (Complaint, ¶ 24.)

Plaintiff alleges that he has received no response to past remedy forms, but he does not describe the nature of the remedy requests, neither the nature of the grievances nor the persons to whom they were sent.

Plaintiff alleges that the tier on which he is now housed has 14 prisoners, seven of whom are smokers.  He does not allege whether he is exposed to ETS as a result of any of these individuals smoking.

Plaintiff names sixteen defendants plus John and Jane Does: Devon Brown, Commissioner of New Jersey Department of Corrections; George W. Hayman, Commissioner of New Jersey Department of Corrections; Lydell Sherrer, Administrator of Northern State Prison; Larry Glover, Administrator of Northern State Prison; Bruce Sapp, Administrator of Northern State Prison; Bruce Hauk, Administrator of Northern State Prison; Correctional

Medical Services, Inc. ("CMS"); Louis Tripoli, Vice President of Medical Affairs for Correctional Medical Services, Inc.; William Andrade, East Coast Supervisor for Correctional Medical Services, Inc.; James J. Neal, M.D., Regional State Medical Director for Correctional Medical Services, Inc.; James Ruman, R.N., Regional Vice President for Correctional Medical Services, Inc.; Rock Welch, Regional Vice President for Correctional Medical Services, Inc.; Abu Atlsan, M.D., New Jersey Medical Director for Correctional Medical Services, Inc.; United Medical and Dental of New Jersey ("UMDNJ"); Bugler Tobacco Company; John Middleton, Inc.; and John and Jane Does described as "unnamed and liable persons that are sued individually and in the official capacity and are either responsible, staff members and/or others liable in this action."

Plaintiff alleges that his exposure to ETS at Northern State Prison exposes him to an unreasonable risk of future injury, in violation of his rights under the Eighth Amendment to the U.S. Constitution. (Complaint, ¶¶ 30-35). This claim appears to be asserted against all defendants.

Plaintiff alleges that defendants associated with CMS and UMDNJ owed Plaintiff the following duties, which they allegedly breached, either negligently or with deliberate indifference: "(a) to adopt, formulate, maintain, and enforce customs, policies, and procedures to insure that Plaintiff was not

subjected to deliberate indifference to serious medical needs, (b) to engage or employ competent and suitable employees in corrections positions, (c) to properly supervise, direct, and control the corrections officials and/or agents under their control, and (d) to provide medical care and treatment to the Plaintiff." (Compl., ¶¶ 36-42.)

Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive monetary damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.   See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.   Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).   The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

5

in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading
requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief."  A complaint must plead facts sufficient at least to
"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d
218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;
the statement need only 'give the defendant fair notice of what
the ... claim is and the grounds upon which it rests.'" Erickson
v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)
(citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an

8

agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.   <u>Claims Asserted Against Tobacco Companies</u>

Plaintiff alleges that certain tobacco companies have violated his rights under the Eighth Amendment, by introducing into the prison environment tobacco products which, when used, expose him to second-hand smoke.

Private parties may be liable under § 1983 only when they have acted under color of state law. <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir.), <u>cert. denied</u>, 516 U.S. 858 (1995) (quoting <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 156 (1978)). The "under color of state law" requirement of 42 U.S.C. § 1983 has been treated identically to the "state action" requirement of the Fourteenth Amendment. <u>See</u> <u>Mark</u>, 51 F.3d at 1141 (citing <u>United States v. Price</u>, 383 U.S. 787, 794 n.7 (1966)); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 928 (1982); <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982)). State action exists under § 1983 only when it can be said that the government is

9

responsible for the specific conduct of which a plaintiff complains. <u>Mark</u>, 51 F.3d at 1141-42.

A private entity can be sued under § 1983 only where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State," <u>Mark</u>, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, <u>Cruz v. Donnelly</u>, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, <u>Edmonson v. Leesville Concrete Co., Inc.</u>, 500 U.S. 614, 620 (1991); <u>Mark</u>, 51 F.3d at 1143.

By contrast, here, Plaintiff has asserted that private tobacco companies, under contract, provided certain products for sale at Northern State Prison. This allegation, standing alone, is insufficient to permit this Court to find that Plaintiff has alleged that these defendants are "state actors." <u>Cf.</u>, <u>e.g.</u>, <u>Ellison v Broadus</u>, 2009 WL 837717 (S.D. Miss. March 26, 2009) (dismissing with prejudice claims against operators of jail commissary because operators were not state actors); <u>Plummer v. Valdez</u>, 2006 WL 2713784 (N.D. Tex. Sept. 21, 2006) (same). Nor is there anything about the provision of tobacco products for

sale in a prison commissary that, standing alone, would permit this Court to conclude that these private tobacco companies are performing state functions or are otherwise to be deemed "state actors." Accordingly, the claims against Bugler Tobacco Company and John Middleton, Inc., will be dismissed with prejudice for failure to state a claim under the Eighth Amendment.

B.   Claims of Excessive Exposure to Environmental Tobacco Smoke

Plaintiff alleges that the defendants have violated his rights under the Eighth Amendment, to be free from cruel and unusual punishment, by exposing him to excessive levels of ETS, creating a risk to his future health. (Complaint, Count One, ¶¶ 30-35.)

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Specifically with respect to the type of claim asserted here, the Supreme Court has held that a prisoner satisfies the objective prong of an Eighth Amendment claim by showing that, "beyond a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS, the Eighth Amendment requires 'a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993) (emphasis in original)).

12

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. at 837.

Plaintiffs allegations here are not sufficient to state a claim. Plaintiff fails to allege the time period during which he has been assigned to share a cell with a smoker and he fails to allege the number of cigarettes the cellmate has smoked while Plaintiff was in the same cell. Cf. Helling (finding that an allegation that cellmate smokes five packs a day is sufficient to state a claim); Atkinson v. Taylor (allegations that prisoner shared a cell with constant smokers for many months stated a claim). In addition, allegations similar to Plaintiff's allegations that other prisoners smoke in the bathroom or outside the designated smoking areas in the recreation area have been held insufficient to state a claim under the Eighth Amendment. See, e.g., Brown v. U.S. Justice Dept., 271 Fed.Appx. 142, 144, 2008 WL 857556, at *2 (3d Cir. Apr. 1, 2008) (collecting cases), cert. denied, 129 S.Ct. 317 (2008); Griffin v. DeRosa, 153 F.

13

Appx. 851, 853, 2005 WL 2891102 (3d Cir. 2005) (collecting cases); Wilson v. Hofbauer, 113 Fed.Appx. 651 (6th Cir. 2004) (allegations of failure to enforce non-smoking policy and to move prisoner to less smoke-filled area of prisons are not sufficient to state a claim).

Moreover, Plaintiff's allegations fail to suggest deliberate indifference. For example, Plaintiff alleges that he is confined in a non-smoking building and that there are designated smoking areas in the recreation area, thus suggesting that prison officials have instituted significant non-smoking policies for the benefit of prisoners. He alleges that when he asked to be moved to a cell with a non-smoker, and was directly asked whether his cellmate was smoking, he responded "no" out of fear of retaliation from his cellmate or other prisoners; thus, he does not suggest that any of the named defendants were aware of his exposure to ETS from his cellmate. Although he alleges that he has submitted grievances, he fails to describe the nature of the grievances, the factual nature of the information contained in them, or the persons to whom they were submitted. He alleges that some unnamed correctional officers fail to enforce the no-smoking policy, but he does not identify those officers and he fails to allege facts suggesting that the named defendants knew that the policies were not being enforced or otherwise knew that

14

he was being exposed to a dangerous level of environmental tobacco smoke.

Finally, it appears that many of the claims against the administrators and officials of the Department of Corrections are based upon an untenable theory of vicarious liability.

Plaintiff specifically describes his Eighth Amendment claim as one for exposure that creates a risk of future health harms. To the extent the Complaint could be construed to assert a claim for denial of treatment of present health damage, based on the allegations of coughing, headaches, etc., it also fails to state a claim. See, e.g., Estelle v. Gamble, 429 U.S. 97 (1976) (Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care); Alvarado v. Litscher, 267 F.3d 648, 653 (7th Cir. 2001) (allegation that exposure to high levels of ETS aggravated prisoner's chronic asthma states claim under Eighth Amendment); Weaver v. Clark, 45 F.3d 1253 (8th Cir. 1995) (severe headaches, dizziness, nausea, vomiting, and breathing difficulties stemming from exposure to ETS constituted a serious medical need, which required removal of the prisoner from a smoking environment under the Eighth Amendment).

Specifically, as noted earlier, an Eighth Amendment claim requires allegations that the defendants acted with "deliberate indifference."  Nowhere does Plaintiff allege that any of the

named defendants were aware of his present health complaints or that they failed to provide appropriate medical care. Accordingly, the Complaint also fails to state a claim based upon present health problems.

For all the foregoing reasons, Plaintiff has failed to allege facts sufficient to state a claim for exposure to environmental tobacco smoke in violation of the Eight Amendment.

C.  Claims Against CMS and UMDNJ Defendants

Plaintiff alleges that defendants associated with CMS and UMDNJ owed Plaintiff the following duties, which they allegedly breached, either negligently or with deliberate indifference: "(a) to adopt, formulate, maintain, and enforce customs, policies, and procedures to insure that Plaintiff was not subjected to deliberate indifference to serious medical needs, (b) to engage or employ competent and suitable employees in corrections positions, (c) to properly supervise, direct, and control the corrections officials and/or agents under their control, and (d) to provide medical care and treatment to the Plaintiff."  (Compl., Count Two, ¶¶ 36-42).

It is not clear whether Plaintiff intends to base this claim upon the Eighth Amendment or upon state tort law.  To the extent Plaintiff is attempting to state a claim for denial of medical care under the Eighth Amendment, this Court has already held that the Complaint fails to state a claim.  More specifically, again,

16

Plaintiff has failed to allege that any of the CMS or UMDNJ defendants had any knowledge of any serious medical condition or that any of them failed to provide appropriate medical care. Allegations of "negligence" are not sufficient to state a claim under the Eighth Amendment.

To the extent Plaintiff is attempting to state a claim under state law, pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim. The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). As no such extraordinary circumstances appear to be present, this Court will dismiss any purported state law claim without prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, all federal claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim. All state law claims will be dismissed without prejudice.

17

However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open and file an amended complaint within thirty (30) days.

An appropriate Order follows.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.


Dated:  June 29, 2010

18