<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WILLIAM HOFFMAN, | : | |
| | : | Civil Action No. 10-0407 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
William Hoffman
Northern State Prison
P.O. Box 2300
168 Frontage Road
Newark, NJ 07114

**SHERIDAN,** District Judge

Plaintiff William Hoffman, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights based upon exposure to environmental tobacco smoke.

In July, 2010, this Court dismissed Plaintiff's original Complaint and granted him leave to move to file an Amended Complaint, which Plaintiff did. At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that, for an unspecified period of time, he was housed on Defendant Officer McEachin's unit with a cellmate "Jenkins" who smoked two packs of Black and Mild Cigars, five cigars to a pack, that he purchased from the prison commissary.  Plaintiff does not state when he was confined with Jenkins or for what length of time.

Plaintiff alleges that in 2007, he shared a cell with three other inmates.  One cellmate smoked a pack of Buglers[1] a day. The second cellmate smoked a pack of Buglers and a pack and a half of Black and Milds per day.

Plaintiff alleges that he asked Defendant Officer Natale for a non-smoker to be housed in the same cell.  When Officer Natale said, "smoking isn't allowed in the cells, are you saying your

---

[1]     A Bugler is a pack of tobacco with rolling papers. According to Wikipedia it is the "#1 tobacco in American prisons."

2

bunkie is smoking," Plaintiff said "no," because, if he said "yes," he would be labelled a "snitch."[2]

Plaintiff alleges that in 2008 he was housed in a unit consisting of 14 prisoners, 7 of whom smoked.  Plaintiff does not allege how much any of them smoke, if they smoke in the unit, etc.

Plaintiff alleges that there is a designated area for smoking in the recreation yard, but that the area is too small for the number of smokers, that it is not enforced, and that the

---

[2] Aside from other considerations, the claim against Officer Natale arising out of Plaintiff's cell assignment with smokers in 2007 is barred by the applicable two-year statute of limitations.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Generally, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

smoking area is 15 feet from the door of the trailer cell unit that Plaintiff is used to enter and exit the trailer, forcing Plaintiff to breathe in their smoke.  Plaintiff alleges that Defendant Correctional Officer I. Vargas is among those smoking near the door.

Plaintiff alleges that the bathroom he is required to use, while employed at his prison job in the kitchen, is used by other prisoners for smoking.

Plaintiff alleges that his clothes, towels, and bedding have retained the smell of smoke and that he is constantly exposed to second-hand and third-hand smoke.  Plaintiff alleges that the exposure to second-hand and third-hand smoke causes Plaintiff coughing, headaches, shortness of breath, and chest pains, repeatedly.

Plaintiff alleges that, on August 18, 2009, he submitted an administrative remedy form, for which he alleges Captain Cannon is responsible.  The administrative remedy read as follows:

> Due to the seemingly pervasive issue of 3rd (third) hand smoke, I respectfully request that a non-smoker section of the units be provided.
>
> Albeit, 2nd (second) hand smoke might be eliminated by the current State Laws and other Rules, the practice does not eliminate nor provide for the issue of 3rd (third) hand smoke.  The matter of 3rd (third) hand smoke is the pollutants and other carcinogens that attach themselves to the person and/or objects in which smoking has occurred.
>
> I, along with numerous others, have problems with 3rd (third) hand smoke and it is now requested that a

4

> wing or section be created to prevent exposure to 3rd
> (third) hand smoke - I respectfully request an
> accommodation be made.  Mind you, this also means that
> non-smoking Officers should be provided when they come
> into said housing area.

(Amended Complaint, Exs. A, B.)  Plaintiff alleges that he requested an interview on the administrative remedy form, but that he did not receive the interview.

Plaintiff alleges that in June 2010, he was housed with two separate inmates in a two month period.  He alleges that both cellmates smoked a pack of Bugler cigarettes a day, forcing Plaintiff to involuntarily breathe second-hand smoke.

Plaintiff alleges that he complained to the medical department of headaches and that, from 2009 to the present, he was advised to purchase aspirin from the prison commissary.

Plaintiff names as defendants New Jersey Department of Corrections Commissioner Devon Brown, Commissioner George W. Hayman, Northern State Prison Administrator Lydell Sherrer, Administrator Larry Glover, Assistant Administrator Bruce Sapp, Assistant Administrator Bruce Hauk, Correctional Medical Services, Inc., United Medical and Dental of New Jersey, Bugler Tobacco Company, John Middleton, Inc.,[3] Captain Cannon, Correctional Officer Natale, Correctional Officer C. McEachin,

---

[3] Plaintiff alleges that Defendant John Middleton, Inc., knowingly sells tobacco products under a state contract.

Correctional Officer L. Vargas, and unnamed John Doe and Jane Doe defendants.

Plaintiff asserts that he has been subjected to an unreasonable risk of future injury, in violation of the Eighth Amendment, arising out of his exposure to environmental tobacco smoke in the form of second-hand and third-hand smoke.  Plaintiff also alleges state-law medical negligence claims against the Defendants Correctional Medical Services and the United Medical and Dental of New Jersey.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

6

in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken

as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

     The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

     The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

9

Therefore, after Iqbal, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  See Phillips, 515 F.3d
at 234-35.  As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure

provides:[4]

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ... If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

_____

[4] It is not sufficient, in a complaint such as this
asserting claims against many defendants, to identify the
defendants in the beginning of the pleading and then fail to tie
the factual allegations to the individual defendants alleged to
be liable.  To "promote clarity," and to provide the notice
required by Rule 8, the claims must be stated in a manner that
specifies which defendant engaged in which specific acts that are
alleged to give rise to liability.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d

13

Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.   <u>Claims Asserted Against Tobacco Companies</u>

To the extent the Amended Complaint could be construed to assert a claim that certain tobacco companies and sellers have violated his rights under the Eighth Amendment, by introducing

14

into the prison environment tobacco products which, when used,

expose him to second-hand smoke, the Amended Complaint fails to

state a claim.

Private parties may be liable under § 1983 only when they

have acted under color of state law.  Mark v. Borough of Hatboro,

51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858 (1995)

(quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)).

The "under color of state law" requirement of 42 U.S.C. § 1983

has been treated identically to the "state action" requirement of

the Fourteenth Amendment.  See Mark, 51 F.3d at 1141 (citing

United States v. Price, 383 U.S. 787, 794 n.7 (1966)); Lugar v.

Edmondson Oil Co., 457 U.S. 922, 928 (1982); Rendell-Baker v.

Kohn, 457 U.S. 830, 838 (1982)).  State action exists under

§ 1983 only when it can be said that the government is

responsible for the specific conduct of which a plaintiff

complains.  Mark, 51 F.3d at 1141-42.  "Put differently, deciding

whether there has been state action requires an inquiry into

whether 'there is a sufficiently close nexus between the State

and the challenged action of [the defendants] so that the action

of the latter may fairly be treated as that of the State

itself.'"  Id. at 1142 (quoting Blum v. Yaretsky, 457 U.S. 991,

1004 (1982)).

A private entity can be sued under § 1983 only where (1) it

"has exercised powers that are traditionally the exclusive

15

prerogative of the State," Mark, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Mark, 51 F.3d at 1143.  See also DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"), cert. denied, 519 U.S. 1111 (1997); Jones v. Arbor, Inc., 820 F. Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state).

By contrast, here, Plaintiff has asserted that private tobacco companies and sellers, under contract, provided certain products for sale at Northern State Prison.  This allegation, standing alone, is insufficient to permit this Court to find that

16

Plaintiff has alleged that these defendants are "state actors."
Cf., e.g., Ellison v Broadus, 2009 WL 837717 (S.D. Miss. March
26, 2009) (dismissing with prejudice claims against operators of
jail commissary because operators were not state actors); Plummer
v. Valdez, 2006 WL 2713784 (N.D. Tex. Sept. 21, 2006) (same).
Nor is there anything about the provision of tobacco products for
sale in a prison commissary that, standing alone, would permit
this Court to conclude that these private tobacco companies are
performing state functions or are otherwise to be deemed "state
actors."  Accordingly, the claims against Bugler Tobacco Company
and John Middleton, Inc., will be dismissed with prejudice for
failure to state a claim under the Eighth Amendment.

B.    Claim of Risk of Future Injury

        Plaintiff alleges that the defendants have violated his
rights under the Eighth Amendment, to be free from cruel and
unusual punishment, by exposing him to excessive levels of
environmental tobacco smoke, creating a risk to his future
health.  (Complaint, Count One, ¶¶ 30-35.)

        The Eighth Amendment to the United States Constitution,
applicable to the individual states through the Fourteenth
Amendment, prohibits the states from inflicting "cruel and
unusual punishments" on those convicted of crimes.  Rhodes v.
Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against
cruel and unusual punishments is violated by the "unnecessary and

wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Specifically with respect to the objective element of a claim based on risk of future injury from excessive exposure to environmental tobacco smoke, the the Supreme Court has detailed the nature of a viable Eighth Amendment Claim.

> "[The prisoner] must show that he himself is being exposed to unreasonably high levels of ETS." [Helling v. McKinney, 509 U.S. 25, 35 (1993)].  With respect to the objective factor, the Court noted that beyond a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS, the Eighth Amendment requires "a court to assess

> whether society considers the risk that the prisoner
> complains of to be so grave that it violates
> contemporary standards of decency to expose anyone
> unwillingly to such a risk." Id. at 36, 113 S.Ct. 2475
> (emphasis in original).  The Court stated: "In other
> words, the prisoner must show that the risk of which he
> complains is not one that today's society chooses to
> tolerate." Id.

Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003) (quoting

Helling v. McKinney, 509 U.S. 25, 35-36 (1993) (emphasis in

original)).

The subjective component requires that the state actor have

acted with "deliberate indifference," a state of mind equivalent

to a reckless disregard of a known risk of harm.  See Farmer v.

Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

> [A] prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or
> safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw the
> inference.

Farmer v. Brennan, 511 U.S. at 837.

Certainly, there are circumstances in which subjecting a

prisoner to excessive amounts of environmental tobacco smoke,

putting him at risk of future injury, may state a claim for cruel

and unusual punishment in violation of the Eighth Amendment.

Despite this Court carefully analyzing those circumstances in its

previous Opinion, however, Plaintiff has failed to state such a

claim in this Amended Complaint.

19

Plaintiff does allege that he is exposed to a certain amount of environmental tobacco smoke, in the cell unit, in the restrooms during his workday, and in the recreation yard. The facts alleged do not suggest deliberate indifference. For example, the exposures in the restroom and in the recreation yard, where there is a designated smoking area and the exposure consists of walking past the smokers near the door, only last briefly.  The claim based on exposure in the cell units, while it may be more significant, suffers from a complete absence of any facts suggesting "deliberate indifference."  Plaintiff asserts that he was housed in a non-smoking unit and that he made a choice not to alert prison officials to the fact that his cellmates were smoking.  Similarly, the allegation that the prison includes designated non-smoking areas in the cell units and the recreation yard belies a claim of "deliberate indifference."  While those designations may not be properly enforced, Plaintiff has failed to allege any facts suggesting knowledge of any such deficiency on the part of the named defendants.  Where much of the exposure is of short duration, and in the absence of any factual allegations suggesting "deliberate indifference," the Amended Complaint fails to state a claim for risk of future injury.  Cf. Helling (finding that an allegation that cellmate smokes five packs a day is sufficient to state a claim); Atkinson v. Taylor (allegations that prisoner shared a

20

cell with constant smokers <u>for many months</u> stated a claim); <u>Brown v. U.S. Justice Dept.</u>, 271 Fed.Appx. 142, 144, 2008 WL 857556, *2 (3d Cir. April 1, 2008) (collecting cases), <u>cert. denied</u>, 129 S.Ct. 317 (2008); <u>Griffin v. DeRosa</u>, 153 Fed.Appx. 851, 853, 2005 WL 2891102 (3d Cir. 2005) (collecting cases); <u>Wilson v. Hofbauer</u>, 113 Fed.Appx. 651 (6th Cir. 2004) (allegations of failure to enforce non-smoking policy and to move prisoner to less smoke-filled area of prisons are not sufficient to state a claim).

Finally, it appears that the claims against the prison administrators and officials of the Department of Corrections are based upon an untenable theory of vicarious liability.

Plaintiff specifically describes his Eighth Amendment claim as one for exposure that creates a risk of future health harms. To the extent the Complaint could be construed to assert a claim for denial of treatment of present health damage, based on the allegations of coughing, headaches, etc., it also fails to state a claim. <u>See</u>, <u>e.g.</u>, <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) (Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care); <u>Alvarado v. Litscher</u>, 267 F.3d 648, 653 (7th Cir. 2001) (allegation that exposure to high levels of ETS aggravated prisoner's chronic asthma states claim under Eighth Amendment); <u>Weaver v. Clark</u>, 45 F.3d 1253 (8th Cir. 1995) (severe headaches, dizziness, nausea, vomiting, and breathing

21

difficulties stemming from exposure to ETS constituted a serious medical need, which required removal of the prisoner from a smoking environment under the Eighth Amendment).

Specifically, as noted earlier, an Eighth Amendment claim requires allegations that the defendants acted with "deliberate indifference."  Nowhere does Plaintiff allege that any of the named defendants were aware of the nature of his present health complaints or that they failed to provide appropriate medical care.  For example, Plaintiff asserts that Correctional Medical Services and United Medical and Dental of New Jersey recommended that he take aspirin for his headaches.  But he does not allege that he ever provided them with information about his alleged excessive exposure to environmental tobacco smoke.

As noted previously, an Eighth Amendment claim requires allegations that the defendant knew of, and disregarded, an excessive risk to inmate health and safety.  It is not sufficient merely to allege the existence of the risk.  In the absence of allegations suggesting knowledge on the part of defendants, Plaintiff has failed to state an Eighth Amendment claim.[5]

---

[5] As to the only factual claims of "knowledge" tied to an individual defendant, they are not sufficient to state a claim. The allegation that Officer Vargas smoked with prisoners in the recreation yard, that allegation is not sufficient to suggest that Officer Vargas know that the smoking in the recreation yard would expose Plaintiff to an unreasonable risk of future injury. Similarly, the allegation that Defendant Cannon received Plaintiff's administrative remedy form sufficient to establish knowledge and disregard of an excessive risk to inmate health.

For all the foregoing reasons, Plaintiff has failed to allege facts sufficient to state a claim for exposure to environmental tobacco smoke in violation of the Eight Amendment.

C.   Claims Against CMS and UMDNJ Defendants

Plaintiff alleges that defendants associated with Correctional Medical Services and United Medical and Dental of New Jersey owed Plaintiff the following duties, which they allegedly breached, either negligently or with deliberate indifference: "(a) to adopt, formulate, maintain, and enforce customs, policies, and procedures to insure that Plaintiff was not subjected to deliberate indifference to serious medical needs, (b) to engage or employ competent and suitable employees in corrections positions, (c) to properly supervise, direct, and control the corrections officials and/or agents under their control, and (d) to provide medical care and treatment to the Plaintiff." (Complaint, Count Two, ¶¶ 36-42).  This language is identical to the language employed in the original Complaint, which this Court found failed to state a claim under the Eighth Amendment.

Again, it is not clear whether Plaintiff intends to base this claim upon the Eighth Amendment or upon state tort law.

To the extent Plaintiff is attempting to state a claim for

---

The administrative remedy form contained to factual information about the level of exposure Plaintiff was experiencing or the effect it was having on his health.

denial of medical care under the Eighth Amendment, this Court has already held that the Complaint fails to state a claim.  More specifically, again, Plaintiff has failed to allege that any of the CMS or UMDNJ defendants had any knowledge of any serious medical condition or that any of them failed to provide appropriate medical care.  Allegations of "negligence" are not sufficient to state a claim under the Eighth Amendment.

To the extent Plaintiff is attempting to state a claim under state law, pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, this Court will dismiss any purported state law claim without prejudice.

V.  CONCLUSION

For the reasons set forth above, all federal claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

24

1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.[6] All state law claims will be dismissed without prejudice.  As Plaintiff has already been afforded an opportunity to amend his complaint, no further opportunity to amend will be granted.

An appropriate order follows.

_s/Peter G. Sheridan_____
PETER G. SHERIDAN, U.S.D.J.

April 5, 2011

---

[6] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.